IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| INTERNATIONAL BROTHERHOOD | : | CIVIL ACTION |
| OF ELECTRICAL WORKERS | : | NO. 10-2806 |
| LOCAL UNION NO. 98 | : | |
| HEALTH & WELFARE FUND, et al. | : | |
| | : | |
| v. | : | |
| | : | |
| JAMES COPELAND ELECTRICAL | : | |
| CONTRACTOR, et al. | : | |

O'NEILL, J.                                                                      DECEMBER 22, 2011

## MEMORANDUM

Plaintiffs International Brotherhood of Electrical Workers Local Union No. 98 Health & Welfare Fund, International Brotherhood of Electrical Workers Local Union No. 98 Pension Plan, International Brotherhood of Electrical Workers Local Union No. 98 Profit Sharing Plan, Electrical Workers Joint Apprenticeship and Training Trust Fund, Local Union No. 98 Vacation Plan, Local Labor Management Cooperation Committee, National Electric Industry Fund and Local Union 98 of the International Brotherhood of Electrical Workers have sued defendants James G. Copeland and his business, James Copeland Electrical Contractor, seeking unpaid contributions. I now have before me plaintiffs' and defendants' motions for summary judgment and the parties' responses thereto. For the reasons that follow, I will grant in part and deny in part plaintiffs' motion and deny defendants' motion.

## BACKGROUND

James Copeland owns his business, Copeland Electrical. Dkt. No. 23-5 at 9-10.[1] According to Copeland, 85-90% of his work over the last fifteen years was "basic maintenance

---

[1] References to the record will be to the document number and pagination generated by the electronic case filing system on the top of each page of the documents filed by the parties.

and repair work," as opposed to work in the building and construction industry.  Dkt. No. 22-3 at 3.

Before the summer of 2006, Copeland Electrical was not a party to any agreement with Local Union 98 of the International Brotherhood of Electrical Workers (IBEW 98) or any other union.  Id.; Dkt. No. 23-5 at 20.  That summer, however, Copeland signed two letters of assent that ostensibly bound Copeland Electrical to the terms of a collective bargaining agreement (CBA) between the Philadelphia Division of the Penn-Del-Jersey Chapter of the National Electrical Contractors Association (N.E.C.A.) and IBEW 98.  Dkt. No. 26-2 at 25; Dkt. No. 21-2 at 2.  Copeland signed one of the letters on August 15, 2006.  Dkt. No. 26-2 at 25.  The other letter does not indicate when Copeland signed it.  Dkt. No. 21-2 at 2.

Although the undated letter includes clerical instructions that the dated version does not, the substantive language of both letters is identical.  They provide in pertinent part that

> [i]n signing this letter of assent, the undersigned firm does hereby authorize the Philadelphia Division, Penn-Del-Jersey Chapter, N.E.C.A. as its collective bargaining representative for all matters contained in or pertaining to the current and any subsequent approved Inside Commercial labor agreement between the Philadelphia Division, Penn-Del-Jersey Chapter, N.E.C.A. and Local Union 98, I.B.E.W.  In doing so, the undersigned firm agrees to comply with, and be bound by, all the terms and conditions contained in said current and subsequent approved labor agreements.

Dkt. No. 26-2 at 25; Dkt. No. 21-2 at 2.

Plaintiffs maintain that Copeland Electrical violated the CBA by failing to make required contributions.  The CBA requires employers to make payments to the following entities:

• National Electrical Benefit Fund

- National Electrical Industry Fund

- Local Labor Management Cooperation Committee

- Local Union 98 Health & Welfare Plan

- Local Union 98 Pension Plan

- Local Union 98 Deferred Income Plan

- Apprentice Training Fund

- Local Union 98 Vacation Plan

Id. at 10-14.  The CBA also requires employers to pay working dues to IBEW 98.  Id. at 13. Notably, two plaintiff funds–the International Brotherhood of Electrical Workers Local Union No. 98 Profit Sharing Plan and the Electrical Workers Joint Apprenticeship and Training Trust Fund–are not among the funds listed in the CBA.  It is not apparent that the "Apprentice Training Fund" listed in the CBA is the same thing as plaintiff Electrical Workers Joint Apprentice and Training Trust Fund.  Neither plaintiffs nor defendants address these discrepancies.

Defendants dispute the import of the letters of assent.  Copeland maintains that in signing the letters, he intended to agree only to the terms of a Partnership Agreement between the School District of Philadelphia and the Philadelphia Building and Construction Trades Council, of which IBEW 98 is a member.  Dkt. No. 22-3 at 3.  The Partnership Agreement provides that

> [c]ontractors who are signatory to this agreement shall be bound by the written terms of any Trust Agreement specifying the detailed basis on which payments are to be paid into, and benefits paid out of, such Trust Funds, but only with regard to work done under this Agreement and only for employees to whom this Agreement requires such benefit payments.

Dkt. No. 22-6 at 9.  Copeland believed that by signing the letters of assent he was agreeing to

make contributions only for his employees' work on School District projects. Dkt. No. 22-3 at 4.

Copeland has given inconsistent accounts of his interactions with officials from IBEW 98. In his interrogatory answers, Copeland stated that he met with officials from the School District and IBEW 98 on July 21, 2006 and "was told that his business relationship with the School District would be governed by the terms of the Partnership Agreement." Dkt. No. 26-1 at 6. He further stated that during that meeting he "was presented with a copy of a collective bargaining agreement for him to sign" and that IBEW 98 officials told Copeland "that he would not be allowed to work for the School District unless he signed it." Id. Likewise, at his deposition Copeland testified that officials from the School District and IBEW 98 told him that he had to be a signatory to a collective bargaining agreement with IBEW 98 to continue performing work for the School District. Dkt. No. 23-5 at 20-21.

Defendants' summary judgment briefing, however, avers that "Copeland was neither aware of the collective bargaining agreement and the obligations to make payments to the Funds as specified therein, nor did [he] ever agree to such terms." Dkt. No. 22-2 at 7. Without citing to the record, defendants further assert that IBEW 98

> represented to Copeland that it intended to abide by key provisions of the Partnership Agreement when, prior to Copeland's execution of the Letter of Assent, [IBEW 98 official] Timothy Browne met with Copeland and told him that (1) IBEW Local 98 would take any of Copeland's employees into the Union as either journeymen or apprentices, and (2) that Copeland would be permitted to use his own workers on any project covered by the Partnership Agreement.

Id. at 9.

Copeland's sworn declaration presents a third version of the facts. Copeland swears that IBEW 98 "apparently substituted a collective bargaining agreement that introduced terms,

4

including obligations to make payments to the Funds at issue, that were materially different from those set forth in the letter of assent to which [he] agreed." Dkt. No. 22-3 at 4. But defendants do not repeat this particular allegation of fraud in their summary judgment briefing.

Additionally, defendants have given inconsistent explanations for why they should not have to pay the contributions plaintiffs presently seek. Defendants' answer to plaintiffs' amended complaint alleges that plaintiffs "obtained Defendant's signatures through fraud and material misrepresentations." Dkt. No. 11 at 3. At his deposition, however, Copeland did not accuse plaintiffs of fraud. Instead, he alleged only that IBEW 98 terminated his employees' union membership or otherwise did not allow them to be union members. Dkt. No. 23-5 at 68-69.

Plaintiffs, on the other hand, deny misleading Copeland as to the meaning of the letters of assent. IBEW 98 officials Timothy Browne and Michael Hnatkowsky both testified at their depositions that they gave Copeland a copy of the CBA along with a letter of assent and urged him to review the documents with his attorney before signing anything. Doc 23-1 at 7; Dkt. No. 23-2 at 8. Browne further testified that Copeland did not sign a letter of assent until approximately ten days after he and Hnatkowsky gave Copeland copies of the letter of assent and the CBA. Dkt. No. 23-1 at 8. Browne and Copeland both denied ever telling Copeland that he had to assent to the CBA to continue working for the School District. Id. at 8; Dkt. No. 23-2 at 8.

Plaintiffs also dispute defendants' characterization of Copeland Electrical's business as repair and maintenance work, outside the building and construction industry. Plaintiffs have submitted several of Copeland Electrical's bids and contracts for other jobs. These documents generally refer to Copeland Electrical performing installation work. See Dkt. No. 23-6. Some of

5

the documents expressly refer to "construction" work.  See, e.g., id. at 3 & 20.  Plaintiffs contend that Copeland Electrical is engaged primarily in the building and construction industry.

## STANDARD OF REVIEW

Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The party moving for summary judgment bears the burden of demonstrating that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Celotex, 477 U.S. at 322-23.  If the movant sustains its burden, the nonmovant must set forth facts demonstrating the existence of a genuine dispute.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  A fact is "material" if it might affect the outcome of the case under governing law.  Id.

> To establish "that a fact cannot be or is genuinely disputed," a party must:
>
> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  The adverse party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions.  Williams v. Borough of W.

Chester, 891 F.2d 458, 460 (3d Cir. 1989).  The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against" the movant.  Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978) (citations and quotation marks omitted).

## DISCUSSION

A.     Claims Against Copeland Electrical

1.     Liability

There is no genuine issue of material fact as to Copeland Electrical's liability to the funds listed in the CBA.  Defendants present several arguments in an attempt to avoid liability, but none are availing.  First, defendants maintain that any contract between IBEW 98 and Copeland Electrical is an unlawful pre-hire agreement because Copeland Electrical does not work in the building and construction industry.  This Court has explained that three elements must be satisfied for a pre-hire agreement to be valid:  "(1) [the agreement] must cover employees who are engaged in the building and construction industry; (2) the agreement must be with a labor organization of which building and construction employees are members; and (3) the agreement must be with an employer engaged primarily in the building and construction industry."  Joseph W. Davis, Inc. v. Int'l Union of Operating Engineers, Local 542, 636 F. Supp. 2d 403, 413 (E.D. Pa. 2008) (internal quotation marks omitted) (alteration in original).

The Court of Appeals has explained that "employers and unions in the construction industry are permitted to enter into pre-hire agreements which designate the union as the exclusive representative of a company's employees without a formal election."  Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers, Local 3 v. Nat'l Labor Relations Bd., 843 F.2d

7

770, 773 (3d Cir. 1988).  Plaintiffs and defendants agree that the CBA amounts to a pre-hire agreement because Copeland Electrical's employees have not elected IBEW 98 as their collective bargaining representative.  The parties also agree that pre-hire agreements are lawful only with respect to companies in the building and construction industry.  See 29 U.S.C. § 158(f) (authorizing pre-hire agreements covering employees engaged in the building and construction industry).  The parties, however, dispute whether Copeland Electrical works primarily in the construction industry.

Copeland swears in his declaration that "[f]or more than the past fifteen years, the vast majority (85% to 90%) of the work [he has] done is basic maintenance and repair work."  Dkt. No. 22-3 at 3.  Defendants do not point to any facts to support this conclusory assertion.  The Federal Rules of Civil Procedure require that "[a]n affidavit or declaration used to support or oppose a motion [for summary judgment] . . . set out facts that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(4).  The Court of Appeals has explained that "to satisfy the standard for summary judgment the affiant must ordinarily set forth facts, rather than opinions or conclusions.  An affidavit that is essentially conclusory and lacking in specific facts is inadequate to satisfy the movant [or non-movant]'s burden."  Blair v. Scott Specialty Gases, 283 F.3d 595, 608 (3d Cir. 2002) (internal quotation marks omitted) (alteration in original).  Copeland's declaration lacks specific facts with respect to the nature of his business and merely concludes that he has worked mostly in "basic maintenance and repair."  Accordingly, the declaration does not satisfy defendants' burden in moving for summary judgment or opposing plaintiffs' motion for summary judgment.

In contrast, plaintiffs point to an array of Copeland Electrical contracts and bid documents

to establish that Copeland Electrical is engaged primarily in the building and construction industry.  See Dkt. No. 23-6.  The documents generally refer to Copeland Electrical's plans to install electrical equipment in various buildings.  I find that this type of work is in the building and construction industry.  On this point I find the National Labor Relations Board's decision in U.S. Abatement, Inc., 303 NLRB 451 (1991) to be instructive.  In that case, the N.L.R.B. adopted the ALJ's recommended Order compelling an asbestos removal company to pay into a union's benefit funds.  Id. at 451.  The ALJ's decision examined whether the company was engaged in the building and construction industry.  The ALJ explained that asbestos removal

> affect[s] the structure of buildings and equipment, such as boilers and pipes, which, after installation, have become an integral part of the structure, itself.  Asbestos removal involves the alteration and repair of buildings and permanently attached fixtures and equipment.  It is readily distinguishable from building maintenance and removal of waste.

Id. at 456.  The ALJ also noted that the company "appear[ed] to concede that installation of insulation or reinsulation are building and construction industry activities."  Id.  Accordingly, the ALJ determined that the asbestos removal company worked in the building and construction industry.

Although this case does not involve the installation or removal of insulation, the reasoning underlying the ALJ's decision in U.S. Abatement applies here.  Plaintiffs' evidence establishes that Copeland Electrical engages in the installation of electrical equipment.  Just as the installation and removal of asbestos "affect[ed] the structure of buildings and equipment," id. at 451, so too does Copeland Electrical's installation work.  Because defendants have pointed to no evidence on this issue other than Copeland's conclusory, self-serving declaration, there is no

genuine issue of material fact as to whether Copeland Electrical is engaged primarily in the building and construction industry. Therefore, the CBA is a valid pre-hire agreement.

Second, defendants assert that the signed letters of assent do not obligate them to make any contributions to plaintiff funds because IBEW 98 has not achieved majority status among Copeland Electrical's employees. Defendants point to language in both signed letters of assent stating that

> [t]he Employer agrees that if a majority of its Employees authorize the Local Union to represent them in collective bargaining, the Employer will recognize the Local Union as the NLRA Section 9 (a) collective bargaining agent for all employees performing electrical construction work within the jurisdiction of the Local Union on all present and future jobsites [sic].

Dkt. No. 26-2 at 25. Defendants maintain that this language requires a majority of Copeland Electrical's employees to elect IBEW 98 as their collective bargaining representative before defendants have any obligation to contribute to plaintiff funds. But the letters of assent plainly state that any employer who signs them will be bound by the CBA between the Philadelphia Division, Penn-Del-Jersey Chapter, N.E.C.A. and IBEW 98. See Dkt. No. 21-2 at 2; Dkt. No. 26-2 at 25. The CBA requires employers to make contributions to certain funds. See Dkt. No. 26-2 at 10-14. Therefore, by signing the letters of assent Copeland obligated Copeland Electrical to make the contributions specified in the CBA. The mere fact that Copeland Electrical's employees have not elected IBEW 98 as their collective bargaining representative does not render illusory an agreement between the parties to make the contributions.

Finally, defendants assert that IBEW 98 committed fraud such that any agreement between Copeland Electrical and the union is void. "Claims for contributions delinquent under

the terms of a collective bargaining agreement can be defeated if it is shown that the collective bargaining agreement is void ab initio, as where there is fraud in the execution . . . ." Connors v. Fawn Mining Corp., 30 F.3d 483, 490 (3d Cir. 1994) (internal quotation marks omitted). The Connors Court approvingly cited the Court of Appeals for the Ninth Circuit's explanation that "'[f]raud in the execution' arises when a party executes an agreement 'with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms.'" Id., quoting Sw. Adm'rs, Inc. v. Rozay's Transfer, 791 F.2d 769, 774 (9th Cir. 1986) (other citation omitted). "To prevail on a defense of fraud in the execution, a party must show excusable ignorance of the contents of the writing signed." Agathos v. Starlite Motel, 977 F.2d 1500, 1506 (3d Cir. 1992) (internal quotation marks omitted). An employer who has signed an agreement requiring contributions to a benefit fund may not avoid the required contributions by "assert[ing] defects in the formation of the collective bargaining agreement, such as . . . fraud in the inducement or oral promises to disregard the text of the agreement." Connors, 30 F.3d at 490 (internal quotation marks omitted).

   Defendants do not point to facts in the record that support a finding of fraud in the execution. In an attempt to show fraud in the execution in their summary judgment briefing, defendants allege that IBEW 98 "represented to Copeland that it intended to abide by key provisions of the Partnership Agreement." Dkt. No. 22-2 at 9. Defendants do not cite to the record to support this assertion. Even if this allegation were true, it would fall short of establishing fraud in the execution because it would not prove that Copeland lacked knowledge or a reasonable opportunity to gain knowledge of the CBA's character and essential terms. Moreover, defendants' assertion that "Copeland was neither aware of the collective bargaining

11

agreement and the obligations to make payments to the Funds as specified therein," id. at 7, is belied by the record. In their answers to plaintiffs' interrogatories, defendants stated that "Copeland was presented with a copy of a collective bargaining agreement for him to sign" at a meeting with IBEW 98 and School District officials on July 21, 2006. Dkt. No. 26-1 at 6.

If, as Copeland swears in his declaration, IBEW 98 led Copeland to believe he was assenting to a document other than the CBA and then "substituted a collective bargaining agreement that introduced terms," Dkt. No. 22-3 at 4, IBEW 98 might have committed fraud in the execution. But defendants do not repeat this allegation in their summary judgment briefing, apparently deciding to abandon it. Accordingly, there is no genuine issue of material fact as to whether plaintiffs committed fraud in the execution.

In sum, Copeland Electrical is bound by the CBA to make contributions to the funds specified therein. I will therefore grant summary judgment with respect to liability in favor of IBEW 98 and the plaintiff funds expressly listed in the CBA: the National Electrical Industry Fund, the Local Labor Management Cooperation Committee, the International Brotherhood of Electrical Workers Local Union No. 98 Health and Welfare Fund, the International Brotherhood of Electrical Workers Local Union No. 98 Pension Plan and the Local Union No. 98 Vacation Plan.

I will deny plaintiffs' motion for summary judgment with respect to the International Brotherhood of Electrical Workers Local Union No. 98 Profit Sharing Plan and the Electrical Workers Joint Apprenticeship and Training Trust Fund because neither fund is listed as a beneficiary in the CBA. I will deny defendants' motion for summary judgment with respect to the International Brotherhood of Electrical Workers Local Union No. 98 Profit Sharing Plan and

the Electrical Workers Joint Apprenticeship and Training Trust Fund because defendants have not moved for summary judgment on the ground that these funds are not listed in the CBA.

### 2. Damages

Plaintiffs seek $265,572.85 in unpaid contributions, not including interest or liquidated damages. In support of this amount plaintiffs attached to their original complaint an audit showing $265,572.85 in contributions owed. See Dkt. No. 1 at 49. This amount, however, includes contributions to funds that are not plaintiffs in this case: "Apprentice Training," "Deferred Income" and "Job Recovery." Neither plaintiffs nor defendants address these discrepancies.

Additionally, defendants dispute the audit's inclusion of contributions relating to the work of certain Copeland Electrical employees. Defendants do not, however, provide any documentary evidence to support their assertions with respect to these employees. I find that there is a genuine issue of material fact with respect to the amount of damages sought by plaintiffs. I will therefore deny plaintiffs' and defendants' motions for summary judgment with respect to damages.[2]

### B. Claims Against Copeland

Plaintiffs argue that Copeland is individually liable for any owed contributions on the theory that Copeland is a plan fiduciary. ERISA provides that "[a]ny person who is a fiduciary

---

[2] Genuine issues with respect to the amount of damages may be reserved for trial after a summary judgment on liability. See Fed. R. Civ. P. 56(g) ("If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact – including an item of damages or other relief – that is not genuinely in dispute and treating the fact as established in the case."); see also NCN Lending, LLC v. Cook, No. H-10-483, 2010 WL 5146600, at *5 (S.D. Tex., Dec. 13, 2010) (granting plaintiff's motion for summary judgment as to liability but denying the motion as to damages).

with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach." 29 U.S.C. § 1109(a). The statute further states that "a person is a fiduciary with respect to a plan to the extent . . . he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." Id. § 1002(21)(A). Plaintiffs argue that Copeland is a plan fiduciary because unpaid contributions are plan assets and Copeland exercises control over them.

ERISA does not define the term "plan assets." Bottle Beer Drivers, Warehousemen & Helpers Teamsters Local 843 v. Anheuser Busch Inc., 96 Fed. App'x 831, 834 (3d Cir. 2004). "To determine if the unpaid contributions were plan assets, we examine the agreement that created the benefit plan." Local Union No. 98, Int'l Bhd. of Elec. Workers v. Garney Morris, Inc., No. 03-5272, 2004 WL 1151722, at *4 (E.D. Pa. May 24, 2004). Plaintiffs have presented a copy of a two-page amendment to the trust agreement for the Health and Welfare Fund, Dkt. No. 26-3, but they have not presented that fund's entire trust agreement, nor have they provided any documents that created any of the other plaintiff funds. Accordingly, on the record before me I cannot determine whether unpaid contributions to plaintiff funds are plan assets. I will therefore deny plaintiffs' motion for summary judgment with respect to their claims against Copeland.

Defendants' summary judgment briefing does not specifically address Copeland's individual liability at all. Accordingly, I will also deny defendants' motion for summary judgment with respect to plaintiffs' claims against Copeland.

An appropriate Order follows.